IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE P., | § | |
|      Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | No. 3:24-CV-02252-BW |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|      Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michelle P. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act as well as her application for Supplemental Security Income ("SSI") under Title XVI of the Act.  (*See* Dkt. No. 1.) The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c). The parties consented to proceed before the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Special Order Nos. 3-350 and 3-354.  (*See* Dkt. No. 8.)  Plaintiff filed a brief on appeal (Dkt. No. 21 ("Pl. Br.")), to which the Commissioner filed a brief in response (Dkt. No. 22 ("Def. Br.")).  After considering the pleadings, briefs, and administrative record, the Commissioner's decision is **AFFIRMED**.

-1-

## I.  BACKGROUND

On February 7, 2021, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning October 25, 2020.  (Dkt. No. 16-1 ("Transcript" or "Tr.") at 15.)  Plaintiff initially alleged a disability due to attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, and bipolar disorder.  (*Id.* at 155.)  The claims were denied on February 2, 2022, and again upon reconsideration on October 11, 2022, after which Plaintiff timely requested an administrative hearing.  (*Id.* at 15.)

On May 10, 2023, Administrative Law Judge Julie Nestler (the "ALJ") held a telephone hearing, at which Plaintiff appeared and testified.  (*See id.* at 117–52.)  Plaintiff was represented at the hearing by Brady Howell, an attorney.  (*Id.*)  Holly Jule, an impartial vocational expert ("VE"), appeared and testified telephonically.  (Tr. at 117–52.)  At the hearing, Plaintiff asserted that the conditions that limited her ability to work included "a left shoulder condition and arm pain, low back pain, chronic obstructive pulmonary disease, obstructive sleep apnea, major depressive disorder, generalized anxiety disorder, and ADHD."  (*Id.* at 23.)  At this time, Plaintiff also amended her alleged disability onset date to May 27, 2021, the date she attained age 50.  (*Id.* at 16.)

On December 20, 2023, the ALJ held a supplemental telephone hearing, at which Plaintiff appeared and testified.  (*See id.* at 89–116.)  Plaintiff was represented at this hearing by Aja Griffin, an attorney.  (*Id.* at 91.)  Holly Jule once again

appeared and testified telephonically as an impartial VE.  (Tr. at 92.)  The ALJ issued an unfavorable decision on February 28, 2024, finding Plaintiff not disabled.  (*See id.* at 15–87.)  On July 9, 2024, the Appeals Council denied Plaintiff's request for further review.  (*Id.* at 1.)  The ALJ's February 28, 2024, decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## II.  LEGAL STANDARDS

### A.    District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *accord Copeland*, 771 F.3d at 923.  To determine whether substantial evidence of disability exists, four elements of proof must be weighted: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923 (citation omitted).

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would

have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

**B.      The Sequential Evaluation Process**

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)).  The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months.  *Id.*; 42 U.S.C. § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)).  On the first four steps of the analysis, the claimant has the initial burden of proving that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  The burden shifts to the Commissioner on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Id.*  "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citation omitted).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the duration requirement, the claimant is disabled.  *Id*. § 404.1520(d).  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits her to perform the requirements of her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then she is not disabled.  *Id*.  If an individual's impairment precludes her from performing past

work, the analysis proceeds to the fifth and final step, at which point the burden

shifts to the Commissioner to show that there is other gainful employment available

in the national economy that the claimant is capable of performing. *Greenspan*, 38

F.3d at 236. This burden may be satisfied either by reference to the Medical-

Vocational Guidelines of the regulations or by expert vocational testimony or other

similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III. ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described

above and made the following findings in her February 28, 2024, decision:

1. The claimant met the insured status requirements of the Social Security Act on May 27, 2021, her amended alleged disability onset date, and she will continue to meet them at least through September 30, 2027.

2. The claimant engaged in substantial gainful activity during the following period: September 19, 2022, through March 29, 2023 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. There have been continuous 12-month periods during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. At all time periods now under consideration, the claimant has the following severe impairments: osteoarthritis of the left shoulder with arthropathy status-post surgical intervention, osteoarthritis of the left wrist, lumbar spondylosis, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea (OSA), mood disorder, generalized anxiety disorder (GAD), and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 at all times now under consideration (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

6. After careful consideration of the entire record during the time period from May 27, 2021, to September 19, 2022, the undersigned finds that the claimant retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could lift and/or carry 10 pounds frequently and 10 pounds occasionally; could stand and/or walk 6 hours in an 8-hour workday (not a limitation on light work); could sit 6 hours in an 8-hour workday (not a limitation on light work); could never climb ladders, ropes, or scaffold; could never crawl; could reach occasionally with the left upper extremity; could never work in environments with exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin; and could understand, remember, and carry out detailed but not complex instructions.

7. After careful consideration of the entire record during the time period from March 30, 2023, through the date of this decision, I find that the claimant retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 10 pounds frequently and 10 pounds occasionally; can stand and/or walk 6 hours in an 8-hour workday (not a limitation on light work); can sit 6 hours in an 8-hour workday (not a limitation on light work); can never climb ladders, ropes, or scaffold; can never crawl; can reach occasionally with the left upper extremity; can never handle, finger, and feel with the left upper extremity; can never work in environments with exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin; and can understand, remember, and carry out detailed but not complex instructions.

8. During the period of time from March 30, 2023, through the date of this decision, the claimant is capable of performing past relevant work as a day care worker, as she performed the work activity. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity during this period of time (20 CFR 404.1565 and 416.965).

9. During the period of time from May 27, 2021, her amended alleged disability onset date, to September 19, 2022, the date she began engaging in substantial gainful activity, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

10. The claimant was born on May 28, 1971, and was 50 years old, which is defined as an individual closely approaching advanced age, on May 27, 2021, the amended alleged disability onset date. She remained so defined to September 19, 2022, the latest date that continues to be under consideration herein (20 CFR 404.1563 and 416.963).

11.     The claimant has at least a high school education, and she is literate (20 CFR 404.1564 and 416.964; and SSR 20–1p).

12.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82–41 and 20 CFR Part 404, Subpart P, Appendix 2).

13.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform at all times from May 27, 2021, her amended alleged disability onset date, to September 19, 2022, the period remaining under consideration (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

14.     The claimant has not been under a disability, as defined in the Social Security Act, from May 27, 2021, her amended alleged disability onset date, through the date of this decision (20 CFR 404.1520 and 416.920).

(Tr. at 15–87.)

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits protectively filed on February 7, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Act. (*Id.* at 78.) The ALJ also determined that, for the application for supplemental security income filed on February 7, 2021, the claimant is not disabled under section 1614(a)(3)(A) of the Act. (*Id.* at 78.)

## IV.  ANALYSIS

Plaintiff asserts a single point of error in this appeal: that the ALJ's determination at step one that Plaintiff's work in the fourth quarter of 2022 and the first quarter of 2023 constituted substantial gainful activity ("SGA") and was not an

unsuccessful work attempt ("UWA") is not supported by substantial evidence.  (Pl. Br. at 3–9.)

At step one of the five-step sequential process, the ALJ must determine whether the claimant is engaged in SGA.  *See* 20 C.F.R. § 404.1520(b).  SGA is defined as "work activity that is both substantial and gainful."  *Id.* § 416.972.  Work activity is substantial when it "involves doing significant physical or mental activities," *id.* § 416.972(a), and gainful when "it is the kind of work usually done for pay or profit, whether or not a profit is realized," *id.* § 416.972(b).  In determining whether a claimant is engaged in, or has the ability to engage in, SGA, ALJs "consider all of the medical and vocational evidence in [the claimant's] file."  *Id.* § 416.971.  Generally, ALJs begin this inquiry by assessing the claimant's earnings. *See Copeland*, 771 F.3d at 924.

When a claimant's income exceeds the SGA monthly earning threshold indicated in the regulations, *see* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2), it raises the presumption that the claimant engaged in SGA, *see Craven v. Berryhill*, No. 4:18-CV-00008-Y-BP, 2018 WL 4658530, at *7 (N.D. Tex. Sept. 11, 2018), *rec. adopted*, 2018 WL 4637285 (N.D. Tex. Sept. 27, 2018).  But a claimant can rebut this presumption by showing that the alleged period of SGA was an UWA.  *Diana M. v. Comm'r*, No. 5:19-CV-258-BQ, 2021 WL 3639751, at *7 (N.D. Tex. July 30, 2021) ("[A]n UWA cannot constitute SGA."), *rec. adopted*, 2021 WL 3633893 (N.D. Tex. Aug. 17, 2021).  A work attempt is considered a UWA if (1) the work attempt was

preceded by a period of "at least 30 consecutive days" where "the claimant was out of work"; (2) the work attempt "lasted six months or less"; and (3) the claimant stopped working "because of her impairment." *Norton v. Saul*, No. 19-9307, 2020 WL 1067011, at *8 (E.D. La. Feb. 4, 2020), *rec. adopted*, 2020 WL 1065114 (E.D. La. Mar. 5, 2020).  If the claimant performed work at the SGA earnings level for more than six months, it cannot be considered "an unsuccessful work attempt regardless of why it ended or was reduced below" the SGA earnings level.  20 C.F.R. § 404.1574(c)(4).  "Plaintiff has the burden of establishing that her previous work qualifies as an unsuccessful work attempt." *Argueta v. Colvin*, No. 1:15-CV-01110-SKO, 2016 WL 4138577, at *8 (E.D. Cal. Aug. 3, 2016) (citations omitted).

Here, the ALJ determined that Plaintiff engaged in SGA from September 19, 2022, to March 29, 2023.  (Tr. at 21.)  Plaintiff testified at the initial telephone hearing on May 10, 2023, that she stopped working at Kindercare Education on March 29, 2023, because she could no longer do her job, (*id.* at 129–30), but the record was "devoid of an explicit hire date," (*id.* at 22).  New Hire reports with quarterly wage records showed that Plaintiff earned $6,001.00 in the fourth quarter of 2022 and $6,268.00 in the first quarter of 2023, (*id.* at 420), resulting in average monthly earnings across those two periods that exceed the SGA monthly earning thresholds of $1,350.00 per month for 2022 and $1,470.00 per month for 2023, *see* 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2).  In the absence of any evidence establishing a start date, the ALJ found it "reasonable to conclude" that Plaintiff's engagement in

-11-

SGA began on September 19, 2022, because that date is the start of the last two-week period of the third quarter of 2022, which "extends into the fourth quarter of 2022 with earnings likely reported in the fourth quarter of 2022." (Tr. at 22.) Once the ALJ found that Plaintiff worked above the SGA earnings threshold from September 19, 2022, to March 29, 2023, she concluded that this work activity could not constitute an UWA, because it lasted for more than six months. (*Id.* at 22 (citing 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(4)).)

Plaintiff does not deny that her earnings in the fourth quarter of 2022 and the first quarter of 2023 were above the presumptive SGA thresholds for both years, (Pl. Br. at 4), but she contends that the ALJ was wrong to conclude that her SGA-level work lasted for longer than the six-month UWA window, because "there is no basis for the ALJ's assumption that Plaintiff began working . . . on September 19, 2022," (*id.* at 5). Plaintiff calls the ALJ's choice of a start date "random" and "baseless," implying that the September start date was selected specifically to extend her period of SGA beyond six months. (*Id.* at 6 n.4.) Why not assume a start date of October 1, which would explain "the uptick in Plaintiff's earnings in the last quarter of 2022" just as well as September 19 would and fit the entire period of SGA-level earnings within a six-month window? (*Id.* at 6.) In Plaintiff's view, the difference between a September start date and an October one could be enough to change her work during this time from SGA to an UWA, which in turn would create downstream effects at

subsequent steps of the sequential evaluation process that could alter the ALJ's ultimate decision to find her not disabled.

At step four of the sequential evaluation process, the ALJ determined that, from March 30, 2023, to the date of the decision, Plaintiff's RFC permitted her to perform her past relevant work ("PRW") as a day care worker, "as she performed it during the period of time from September 19, 2022, through March 29, 2023." (Tr. at 73–74.)  If the claimant can perform her PRW, then she is not disabled.  20 C.F.R. § 404.1520(f).  PRW is work that the claimant has performed "long enough for the claimant to learn to do it," at the level of SGA, "within the past 15 years." *Brown v. Comm'r*, No. 24-11068, 2025 WL 1693070, at *1 (5th Cir. June 17, 2025) (unpublished) (citing 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1)).  A claimant is capable of performing PRW if she can perform the work "either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).

Here, the ALJ found that Plaintiff has PRW activity as a day care worker and assistant director, day care, from 2009 to 2020.  (Tr. at 73.)  The ALJ "explicitly" noted that Plaintiff later returned to her PRW activity as a day care worker on September 19, 2022, and worked in that position at the SGA level through March 29, 2023.  (*Id.*)  Plaintiff's second stint as a day care worker in late 2022 and early 2023 came with conditions and limitations to her responsibilities that altered how she performed her work compared to how she performed it prior to the alleged onset of

her disability, but the work "continue[d] to constitute past relevant work" as a day care worker "for the period after March 29, 2023." (*Id.*) During this time, Plaintiff needed others to change the children's diapers because she was limited to lifting only five pounds. (Tr. at 73; Pl. Br. at 8.) Plaintiff also needed to sit down every ten minutes due to pain and numbness in her feet caused by her diabetes. (*Id.*) Additionally, Plaintiff was unable to use her left arm and performed all her tasks using only her right arm. (*Id.*) These were all differences from her previous experience as a day care worker. (Pl. Br. at 8.)

At the initial hearing on May 10, 2023, the VE testified that the job of day care worker, as it is generally performed in the national economy and as Plaintiff performed it prior to the alleged onset of her disability, is light in exertional demand. (Tr. at 73.) At the December 20 supplemental hearing, the VE testified that the job of day care worker, as it was actually performed by Plaintiff in a more limited capacity from late 2022 to March 29, 2023, was sedentary in exertional demand. (*Id.* at 108.) The VE then testified that, under Plaintiff's RFC determined at step three, Plaintiff retained the capacity to perform as a day care worker as she had actually performed it in the fourth quarter of 2022 and the first quarter of 2023, but not as it is generally performed in the national economy. (*Id.* at 111–12.) Because Plaintiff was capable of performing PRW as a day care worker, as she had actually performed it, the ALJ found Plaintiff to be not disabled from March 30, 2023, through the date of the decision and denied her claims for benefits. (*Id.* at 78.)

-14-

But if Plaintiff is correct that her brief return to day care work should really be classified as an UWA, rather than SGA, then it cannot serve as PRW that she is still capable of performing.  This is because any work that "meets the definition of unsuccessful work attempt does not constitute past relevant work for purposes of step four" of the sequential evaluation process.  *Hall v. Saul*, No. 19-CV-3019-LTS-KEM, 2020 WL 5229539, at *8 (N.D. Iowa May 27, 2020) (cleaned up).  Without this work experience, Plaintiff's only PRW as a day care worker came before the alleged onset of her disability, when she performed it as it is generally performed in the national economy, and the VE has testified that Plaintiff is no longer able to perform the work in this way under her current RFC.  (*See* Tr. at 111–12.)  With Plaintiff unable to perform any of her PRW, the ALJ would then have to move to the fifth and final step of the sequential evaluation process and identify jobs available in the national economy that Plaintiff could still perform under her assessed RFC, if any exist.  20 C.F.R. § 404.1520(g)–(h).  Thus, the foundation for the ALJ's ultimate decision in this case rests on whether Plaintiff's return to day care work from late 2022 through March 2023 was SGA or a UWA, which in turn could depend on the specific start date assumed by the ALJ.

The problem for Plaintiff is that, despite being granted ample opportunities to provide evidence establishing her 2022 start date, she has failed to share any testimony or documentation that supports her challenge to the ALJ's assumed start date of September 19, 2022.  In her Disability Report, it was noted that Plaintiff did

-15-

not provide her job start and end dates, her pay rate, or her hours and days worked per week, (Tr. at 433), and in her Work History Report, Plaintiff reported that she had not worked since November 16, 2020, (*id.* at 459).  But New Hire quarterly wage reports showed that she had earnings every quarter from the second quarter of 2021 to the third quarter of 2023, crossing the SGA-level earnings threshold in the fourth quarter of 2022 and the first quarter of 2023.  (*Id.* at 397, 402–03, 420.)

When asked by the ALJ at the May 10, 2023, hearing if she had worked at any time since her amended alleged disability onset date of May 27, 2021, Plaintiff said she worked part-time.  (*Id.* at 128.)  Only when the ALJ confronted her with her recorded earnings of over $6,000.00 in the fourth quarter of 2022 did Plaintiff admit that she "think[s]" she worked full-time "some of the time."  (*Id.* at 128.)  Plaintiff testified that she stopped working on March 29, 2023, but she did not provide a start date.  (Tr. at 129.)  The ALJ then asked Plaintiff to produce employment records documenting her earnings from January 2022 to the date of the hearing.  (*Id.* at 128–29.)  At the supplemental hearing held on December 20, 2023, the ALJ noted that she had specifically requested Plaintiff provide documents for "evidence regarding [Plaintiff's] work for the entirety of 2022 through the present" but that no such documents had been submitted in the seven months since the initial hearing.  (*Id.* at 94.)  Plaintiff did not testify at the supplemental hearing regarding her starting date. (*See id.* at 22.)

Without the requested records concerning Plaintiff's employment history, the ALJ had to rely on the New Hire quarterly wage reports to determine the duration of Plaintiff's SGA. (*See id.* at 21–22.)  Though lacking an explicit start date, the reports showed that Plaintiff earned wages for the entirety of 2022, indicating she was employed in some capacity by Kindercare Education for months before her earnings sharply increased in the fourth quarter of 2022. (Tr. at 22.)  The ALJ concluded that Plaintiff's "start date" for the purposes of the SGA analysis would not be her actual first day returning to employment with Kindercare but the day her work activity increased to the level of SGA. (*Id.* at 22.)  Based on this information, and in the absence of evidence submitted by Plaintiff, it was reasonable for the ALJ to assume—given that Plaintiff's earnings exceeded the SGA threshold in quarter four, but not quarter three—that Plaintiff's SGA start date was on the first day of the first two-week pay period of the fourth quarter of 2022.  It was likewise reasonable to assume—since the fourth quarter began on Saturday, October 1, 2022—that the first pay period of quarter four would cover the last two weeks of September, placing Plaintiff's start date on September 19, 2022.

Plaintiff acknowledges that the specific employment information requested by the ALJ was never provided, but she insists that her failure to proffer evidence does not justify the ALJ's "baseless" choice of a start date. (Pl. Br. at 6 n.4.)  It is true that "[s]ocial security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (plurality), and the ALJ has a duty to "develop the facts

fully and fairly relating to an applicant's claim for disability benefits," *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (cleaned up). But the burden is initially on the claimant in a social security proceeding to prove that they disabled within the meaning of the regulations. *Bowen*, 482 U.S. at 146 n.5. The claimant is responsible for submitting "all evidence known to [her] that relates to whether or not" she is disabled and has an ongoing duty to inform the ALJ when asked about past "work experience," past "efforts to work," and "how [her] impairment(s) affects [her] ability to work." 20 C.F.R. § 404.1512(a)(1).

The ALJ in this case satisfied her duty to develop the record when—after identifying the lack of information on Plaintiff's SGA start date in the New Hire quarterly wage reports, Plaintiff's submitted statements, or Plaintiff's in-hearing testimony—she requested Plaintiff provide employment records documenting her dates worked in 2022 and 2023. *See Newton*, 209 F.3d at 458 ("Reversal, however, is appropriate only if the applicant shows prejudice from the ALJ's failure to request additional information." (citation omitted)). And when the record had been kept open for seven months after the initial hearing without a single new document or statement concerning Plaintiff's employment having been offered, the ALJ felt it "necessary" to hold an additional supplemental hearing before reaching a conclusion. (Tr. at 22.) It was Plaintiff who did not meet her evidentiary burden in this case.

Despite repeated opportunities and requests to provide more employment information, Plaintiff has not at any point in this case offered a start date for her SGA at Kindercare in late 2022, even after stating her definitive end date was March 29, 2023.  (*Id.* at 129.)  In challenging the ALJ's assumed start date of September 19, 2022, Plaintiff provides no new evidence that contradicts the ALJ's finding or supports a different start date.  Plaintiff points out that, according to her own "consideration of the 2022 calendar, the last two-week period of the third quarter of 2022 was actually September 26, 2022," not September 19 as the ALJ concluded. (Pl. Br. at 5.)  But even if Plaintiff is right about this, a start date of September 26 would still mean her SGA lasted for longer than six months before ending on March 29, 2023.  Plaintiff offers October 1, 2022, as an example of a different start date the ALJ could have chosen, one that would mark the SGA as under six months, but she provides no evidence in support of it and never even asserts that it was her actual start date.  (*See id.* at 5–6.)

The ALJ's findings must be rooted in substantial evidence—"such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley*, 67 F.3d at 555 (quoting *Greenspan*, 38 F.3d at 236).  Plaintiff herself concedes that "if the ALJ's finding regarding her start date of September 19, 2022, is reasonably supported by the evidence," then her SGA in the fourth quarter of 2022 and the first quarter of 2023 lasted for longer than six months, "preclud[ing] consideration of whether it was a[n] UWA."  (Pl. Br. at 5.)  In assessing Plaintiff's SGA start date, the ALJ

recounted her efforts to develop the factual record, explained how SGA is defined and analyzed under the regulations, and cited the evidentiary sources she relied upon in reaching her conclusion.  (*See* Tr. at 21–23.)  "In this regard, the ALJ's decision far exceeds the substantial evidence burden, which is satisfied by more than a mere scintilla but less than a preponderance."  *Daily o/b/o T.S. v. Comm'r*, No. 4:20-CV-01347-O-BP, 2022 WL 598524, at *5 (N.D. Tex. Feb. 9, 2022) (cleaned up), *rec. adopted*, 2022 WL 598237 (N.D. Tex. Feb. 28, 2022).  Finding more than a mere scintilla of evidence in support of the ALJ's finding, the Court finds no reason to reverse the Commissioner's decision.

## V.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on March 18, 2026.

 

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

-20-